Astrid Castro **FRANCESCHI, et al., Plaintiffs,**

v.

**HYATT CORPORATION, et al., Defendants.**

**Civ. No. 88–285(PG).**

United States District Court, D. Puerto Rico.

Sept. 25, 1990.

---

Harry Anduze Montaño and Guillermo Ramos Luiña, Hato Rey, P.R., for plaintiffs.

Keith Graffam, Cordero, Miranda & Pinto, Old San Juan, P.R., for defendants.

## OPINION AND ORDER

PEREZ–GIMENEZ, Chief Judge.

This is an action seeking damages and injunctive relief as a result of the Cerromar Beach Hotel's refusal to allow admittance into its premises to co-plaintiffs Miguel Nogueras and Barbara Blanco at a time when they were planning to visit co-plaintiffs and registered guests Astrid Castro and Annette Nogueras. In plaintiffs' view of things, the incident was based on racial and ethnic considerations, inasmuch as in denying them entrance the security guard allegedly stated that "[t]he hotel's management is prejudiced against people of our race."

As a result of this incident, plaintiffs filed claims against the Hyatt Corporation, Hyatt Hotels of Puerto Rico, Inc., and Dorado Beach Corporation under the provisions of 42 U.S.C. §§ 1981 *et seq.* (Civil Rights) and 42 U.S.C. §§ 2000a *et seq.* (Prohibition Against Discrimination and Segre-

gation in Places of Public Accommodations). They have also stated claims under Article II, Sections 1 and 8 of the Constitution of the Commonwealth of Puerto Rico, and Articles 1802 and 1803 of the Puerto Rico Civil Code, P.R. Laws Ann. tit. 31, §§ 5141 & 5142. Jurisdiction is therefore premised on the determination of plaintiffs' underlying federal rights and the doctrine of pendent jurisdiction. Venue is proper under 28 U.S.C. §§ 1391.

The matter pends before the Court on defendants' October 17, 1988, motion to dismiss or, alternatively, for summary judgment, which has precipitated the filing of an inordinate number of oppositions, replies, and responses from both sides. On January 23, 1990, the Court referred the motions to the United States Magistrate for his report and recommendation and on April 16, 1990, the magistrate complied. Displeased with the magistrate's recommendation, both parties filed objections before the Court, plaintiffs in the form of a partial motion for reconsideration on April 26, 1990, and defendants by way of an appeal filed on May 16, 1990. Specific written objections having been seasonably filed, the magistrate's recommendation is subject to *de novo* review before this Court. Fed.R.Civ.P. 72(b), *Paterson–Leitch v. Massachusetts Elec.*, 840 F.2d 985, 990 (1st Cir.1988).

Four are the issues which are presently before the Court for review. First, we must determine whether *in personam* jurisdiction can be exercised over the Hyatt Corporation, the same being a Delaware corporation whose principal place of business is in Illinois and whose dealings in Puerto Rico are admittedly slim. Next, we turn to consider whether the facts of this case are sufficient to state causes of action under 42 U.S.C. §§ 1981 *et seq.* and 2000a *et seq.* Finally, we must decide whether, in our discretion, we should exercise pendent jurisdiction over plaintiffs' local law claims.

The facts of this case can be summarized as follows. On March 26, 1987, Astrid Castro Franceschi and her daughter, Annette M. Nogueras, checked into the Hyatt Cerromar Hotel in order to attend Citibank's 936 Conference. On Saturday, March 28, 1987, Mrs. Castro's son and daughter-in-law, Miguel A. Nogueras and Barbara F. Blanco, travelled to the Hotel, at Mrs. Castro's request, to spend the day with her. When Mr. and Mrs. Miguel Nogueras arrived at the gate, they were denied admittance to the Hotel's premises and were further advised that, pursuant to instructions from the management, they could not be allowed to call Mrs. Castro from the gate. The security guard suggested that if they wanted to communicate with Mrs. Castro they would have to drive to a nearby phone located about a mile away, something that Mr. and Mrs. Nogueras reluctantly had to do. Upon communicating with Mrs. Castro, she informed them that she would immediately go to the front desk to clear the matter up.

At the front desk, Mrs. Castro was informed that hotel policy directed that no visitors could be allowed to enter the hotel. She informed the hotel employees that these visitors were her son and daughter-in-law whom she had invited to spend the day with her. Even after listening to her explanation, however, the employees reiterated that they could not give her relatives access to the hotel. Understandably irated, Mrs. Castro asked to see the manager. When the manager arrived, Mrs. Castro related to her the essence of her complaint but, much to her surprise, the manager simply turned her back to her and left. These incidents, it is contended, took place in the presence of third parties both known and unknown to the plaintiffs. In order to save herself and her family further humiliation and embarrassment, Mrs. Castro called her son at the hotel gate and told him to leave. While waiting at the gate, Mr. and Mrs. Nogueras presumably witnessed how the security guard would consistently admit every English-speaking visitor and deny admittance to the Spanish-speaking ones. Perhaps more importantly, the Nogueras also allege that an employee of the hotel (of Puerto Rican descent) informed them that "[t]his management is prejudiced against people of our race." Defendants, predictably, deny that these latter allegations ever took place.

Before leaving the facts we must add that co-defendant Hyatt Corporation is a corporation organized under the laws of the State of Delaware whose principal place of business is in the State of Illinois. It is not the owner of the Hyatt Regency Cerromar Beach Hotel, nor is it responsible for the administration or operation of the hotel. Furthermore, the Hyatt Corporation does not have any employees, officers, bank accounts, or telephone listings in Puerto Rico. In every room of the Dorado and Cerromar Hotels, however, patrons can find self-addressed, postage prepaid questionnaires in which the Hyatt Corporation requests comments and suggestions on the service of these hotels and advertises a toll-free number to be used for future reservations. Co-defendants Dorado Beach Hotel Corporation and Hyatt Hotels of Puerto Rico, Inc. are corporations organized under the laws of the State of Delaware whom defendants allege, and plaintiffs adventurously deny, have their principal places of business in Puerto Rico.

■ We begin by determining whether we can constitutionally exercise *in personam* jurisdiction over the Hyatt Corporation, a nonresident corporate defendant. The Due Process Clause of the Constitution of the United States limits the power of courts to render judgments against nonresident defendants. *Kulko v. California*, 436 U.S. 84, 91, 98 S.Ct. 1690, 1696, 56 L.Ed.2d 132 (1978), *World Wide Volkswagen v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1979).[1] Due process requires, at a minimum, that the defendant be subject to the personal jurisdiction of the court. *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90

L.Ed. 95 (1945). A court may exercise personal jurisdiction over a nonresident defendant only as long as there exist "minimum contacts" between the defendant and the forum State. *International Shoe*, 326 U.S. at 316, 66 S.Ct. at 158.[2]

In *World Wide Volkswagen* the Court gave flesh to this latter requirement's bare bones. It saw the concept of "minimum contacts" as performing two related, but distinguishable, functions. First "it protects the defendant against the burden of litigating in a distant or inconvenient forum." *World Wide Volkswagen*, 444 U.S. at 292, 100 S.Ct. at 564. Secondly, it acts to ensure that courts and the States they reside in do not reach out beyond the limits imposed on them by the federal system. *Id.* The protection against inconvenient litigation requires that the defendant's contacts with the forum state be such that maintenance of the suit "does not offend traditional notions of fair play and substantial justice." *Id.*, quoting from *International Shoe*, 326 U.S. at 316, 66 S.Ct. at 158, in turn quoting from *Milliken v. Meyer*, 311 U.S. 457, 61 S.Ct. 339, 85 L.Ed. 278 (1940). Put another way, only when a defendant has performed acts with relation to a particular state which have allowed it to enjoy the protection afforded by its laws would it then be fair that it be required to defend a particular suit which is brought against it in its courts. *Cf. Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958). With regard to the second function, the Court noted that "the Due Process clause does not contemplate that a state may make binding a judgment *in personam* against an individu-

---

**1.** We note that, were this to be "a diversity case, ... the district court's personal jurisdiction over a nonresident defendant [would be] governed by the forum's long arm statute." *Mangual v. General Battery Corp.*, 710 F.2d 15 (1st Cir.1983). Puerto Rico's long arm statute is Rule of Civil Procedure 4.7, P.R.Laws Ann. tit. 32, App. III R. 4.7, which, although somewhat more stringent than the federal rule, *see Pizarro v. Hoteles Concorde Intern.*, 719 F.Supp. 61, 63 (D.P.R.1989), was nevertheless interpreted in *Industrial Siderúrgica v. Thyssen Steel Caribbean*, 114 D.P.R. 548 (1983) along the lines drawn by the United States Supreme Court in its *World Wide Volks-*

*wagen* decision. Taking either approach, however, would, in our opinion, lead us to identical conclusions.

**2.** We further clarify that, even though in *World Wide Volkswagen* the Court framed the issue in terms of whether, consistent with the Due Process clause of the federal Constitution, a *state* court could exercise *in personam* jurisdiction over a nonresident defendant, we find that case fully applicable to the one at bar (which was initially filed in the federal courts) given the fact that the Court's analysis was based on the limits imposed by the federal Constitution.

al or corporate defendant with which the state has no contacts, ties, or relations." *World Wide Volkswagen* 444 U.S. at 294, 100 S.Ct. at 565, quoting from *International Shoe*, 326 U.S. at 319, 66 S.Ct. at 159. *See generally Donatelli v. N.H.L.*, 893 F.2d 459 (1st Cir.1990).

In light of these principles, it is with little pause that we conclude that this Court may not constitutionally exercise *in personam* jurisdiction over the Hyatt Corporation under the circumstances of this case. Plaintiffs would have us hold that the fact that the Hyatt Corporation makes brochures available to its Dorado Beach and Cerromar Hotel guests through which comments and suggestions on the Hotels' services are requested and a toll-free reservations number is displayed constitutes the required "minimum contacts" that would confer *in personam* jurisdiction over said codefendant upon this Court. A recent First Circuit decision, however, decidedly cuts against the argument presented by the plaintiffs before us. In *Pizarro v. Hoteles Concorde Intern., C.A.*, 907 F.2d 1256 (1st Cir.1990), plaintiffs were attempting to have the district court exercise *in personam* jurisdiction over a nonresident defendant on the strength of the fact that said defendant solicited business in Puerto Rico by placing advertisements in a daily newspaper of general circulation in the Island. In affirming the district court's dismissal of the action, the First Circuit stated that "[f]urthermore, the assertion (on the basis of the newspaper advertisements) of general *in personam* jurisdiction over [the defendant] would violate the constitutional requirement of minimum contacts." *Pizar-*

ro, 907 F.2d at 1260.[3] It cannot be seriously disputed that the placing of brochures in the hotels' premises is at least as insignificant a "contact" with the forum state as the placing of advertisements in a newspaper of general circulation, if not more. Moreover, we are of the opinion that by the mere fact of placing brochures in these hotels the Hyatt Corporation is not sufficiently availing itself of the benefits and protections afforded by the laws of Puerto Rico so as to impose upon them the correlative burden of submitting to this forum's courts, at least not consistent with traditional notions of substantial justice and fair play. And, we believe that, were we to exercise *in personam* jurisdiction over the Hyatt Corporation, we would be reaching out beyond the limits imposed on each forum by our federal system of government, as clearly the Hyatt Corporation has been shown to have barely any "contacts, ties, or relations" with the Commonwealth of Puerto Rico as to render the exercise of such jurisdiction consistent with the Due Process clause. Hence, we must conclude that the Hyatt Corporation's contacts with Puerto Rico are too minimal and insufficient to subject it to the *in personam* jurisdiction of this district court.

■■■ Turning to consider whether plaintiffs have sufficiently stated a cause of action under the Civil Rights Acts, we must start by clarifying precisely what this case is about. This case is simply about an isolated incident in which plaintiffs were denied access to the Hotel's premises allegedly on the basis of racial considerations; nothing more and nothing less.[4] Defen-

---

**3.** In *Pizarro,* a diversity case, the First Circuit was applying Puerto Rico's long-arm statute, as required by the case law, *see* fn. 1, supra. Although Puerto Rico's long-arm statute's additionally requires that a plaintiff's cause of action be causally related to the minimum contacts, *see Pizarro v. Hoteles Concorde Intern.,* 719 F.Supp. 61, 63 (D.P.R.1989), the language quoted from the First Circuit's *Pizarro* decision is particularly significant because it reflects that Court's understanding that the assertion of jurisdiction under the circumstances of that case would have even violated the Supreme Court's constitutional requirement of "minimum contacts."

**4.** In the interest of clarity, we note that, as plaintiffs correctly point out, what this case is not about is discriminatory practices in the hiring of employees or in the scheduling of reservations by these hotels, so whether or not over 90% of the hotel employees, management, and registered guests are Puerto Rican or whether or not plaintiffs and all other guests were able to use the hotels' services and facilities without confronting any other problems (facts which *defendants* give so much emphasis to) is entirely besides the point. For the same reasons, plaintiffs need not plead that it was the hotels' policy to racially discriminate against Hispanics, so defendants' vehement objection along this line must also be rejected. We also reject

dants' main objection to plaintiffs' maintenance of a civil rights claim based on these facts is that plaintiffs' case does not satisfy the "under color of state law" requirement of the Civil Rights Acts. The Supreme Court of the United States has held, however, that the Civil Rights Acts were intended to "prohibit all racial discrimination, whether or not under color of state law, with respect to the rights enumerated therein." *Jones v. Mayer Co.*, 392 U.S. 409, 436, 88 S.Ct. 2186, 2201, 20 L.Ed.2d 1189 (1968), *General Building Contractors Assn. v. Pa.*, 458 U.S. 375, 387, 102 S.Ct. 3141, 3148, 73 L.Ed.2d 835 (1982). Hence, would plaintiffs be able to prove the central factual aspects on which their case rests, to wit, that at the time the security guard denied them entrance to the Hotel he stated that "[t]he hotel's management is prejudiced against people of our (Puerto Rican) race" and, additionally, that he was in fact permitting entrance only to the English-speaking visitors and denying it to the Spanish-speaking ones, we believe they would have validly stated a claim under 42 U.S.C. §§ 1981 *et seq.* Defendants, however, have denied under oath that such actions ever took place. *See* Deposition of Mr. Pedro Segarra, Exhibit I of Defendants' Supplemental Motion to Dismiss. Thus, a genuine and material issue of fact exists which prevents the entry of summary judgment at this stage. *Gryggs–Ryan v. Smith*, 904 F.2d 112, 115 (1st Cir.1990). Such factual inquiries, it cannot be disputed, are for the jury to decide. *Anderson v. Libberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986).

The Court is of the opinion, however, that amidst this plethora of legal memoranda which the parties have filed, an issue of particular importance has been overlooked. It is an undisputed fact of this case that all plaintiffs are Puerto Rican; as for the re-

maining corporate defendants, an unopposed affidavit filed by the defendants at the time when the issue of whether complete diversity existed (an issue which the Court did not have to address since an independent jurisdictional basis exists) has established that their principal places of business are in Puerto Rico. *See* Exhibit A of defendants' Motion for Summary Judgment, Dkt. # 10. In view of the Supreme Court's expressions in the case of *St. Francis College v. Al–Khazraji*, 481 U.S. 604, 609–610, 107 S.Ct. 2022, 2032–33, 95 L.Ed.2d 582 (1986), we must ask ourselves the question of whether discrimination by a person of Puerto Rican descent against another person of Puerto Rican descent because of the fact that he or she is Puerto Rican is actionable under the Civil Rights Acts. Put another way, the Court has some doubts, yet recognizes the possibility, that the Civil Rights Acts provide a remedy for racial discrimination among members of the same race. Since the parties have not had an opportunity to express themselves regarding this issue, the Court will grant them twenty days in which to file legal briefs addressing the same.

■ We turn now to consider whether plaintiffs have stated a cause of action under 42 U.S.C. §§ 2000a *et seq.* (Prohibition Against Discrimination and Segregation in Places of Public Accommodations or Title II of the Civil Rights Act). As the Supreme Court has stated, "Title II of the Civil Rights Act enacted a sweeping prohibition of discrimination or segregation on the grounds of race, color, religion, or national origin at places of public accommodation whose operations affect commerce." *Daniel v. Paul*, 395 U.S. 298, 301, 89 S.Ct. 1697, 1699, 23 L.Ed.2d 318 (1968). "[I]ts fundamental object ... was to vindicate the deprivation of personal dignity that surely accompanies denials of equal access

---

defendants' contentions that the plaintiffs have only stated a claim of national origin discrimination and not of racial or ethnic discrimination, *see St. Francis College v. Al–Khazraji*, 481 U.S. 604, 107 S.Ct. 2022, 95 L.Ed.2d 582 (1987) (Sec. 1981 covers discrimination based on a person's ancestry or ethnic characteristics, not his place or nation of origin), and that plaintiffs

have not submitted proof of purposeful discrimination, *General Building Contractors Assn. v. Pa.*, 458 U.S. 375, 102 S.Ct. 3141, 73 L.Ed.2d 835 (1982) (Sec. 1981 can be violated only by purposeful discrimination), and the evident lack of merit of these contentions relieves us from our responsibility of elaborating on these points.

to public establishments." *Roberts v. United States Jaycees*, 468 U.S. 609, 625, 104 S.Ct. 3244, 3253, 82 L.Ed.2d 462 (1983), *Heart of Atlanta Motel, Inc. v. United States*, 379 U.S. 241, 250, 85 S.Ct. 348, 354, 13 L.Ed.2d 258 (1964). Given the difficulty it expected to encounter in the enforcement of the Civil Rights Act, Congress intended that "the Nation ... rely in part on private litigation as a means of securing broad compliance with the law." *Newman v. Piggie Park Enterprises*, 390 U.S. 400, 401, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263 (1968). The remedy afforded, however, is injunctive in nature, and no monetary damages can be allowed. *Newman*, 390 U.S. at 402, 88 S.Ct. at 966.

■ In view of the broad construction the United States Supreme Court has given to Title II of the Civil Rights Acts, we are of the opinion that the allegations of this case, if proven, would fall squarely within the proscriptions envisioned by Congress in enacting this law. It is undisputed that the hotels at issue were "places of public accommodations whose operations affect commerce," and it is clear that facts have been alleged (regarding the conduct an official from the hotel, i.e., the security guard) which, if proven, could establish that plaintiffs were denied access to the hotel on the basis of their race. Defendants' main objection is that plaintiffs cannot state a claim under § 2000a because they were not seeking or denied accommodations in these hotels. Such narrow interpretations of the statute, however, have been rejected by the Court in the past, *see Daniel v. Paul*, supra, and we follow its lead. Defendants further submit that plaintiffs failed to comply with the notification requirements of 42 U.S.C. § 2000a–3(c), but we agree with the plaintiffs that said requirements apply only to states with analogous legislation and Puerto Rico has none. Hence, we conclude that plaintiffs have validly stated a claim under Title II which could entitled them to the injunctive relief provided in the statute. The same issues of fact which prevent the entry of summary judgment with respect to plaintiffs' § 1983 claims, however, necessitate an identical result with regard to plaintiffs' Title II claims, and hence summary judgment as to this aspect of the case must also be denied.

■ Finally, we must decide whether we will exercise jurisdiction over plaintiffs' pendent state claims. The test to determine whether a court should exercise jurisdiction over pendent state law claims, whose genesis is to be found in the Supreme Court's decision in *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), requires us to determine, first, whether we have authority, or "constitutional power," over the state law claims, and, second, whether in our discretion we should entertain them. Authority to exercise jurisdiction over state law claims exists if the federal claim has "substance sufficient to confer subject matter jurisdiction on the court," and the state and federal claims "derive from a common nucleus of operative fact" so that a plaintiff "would ordinarily be expected to try them all in one judicial proceeding." *Gibbs*, 383 U.S. at 725, 86 S.Ct. at 1138. A district court lacks subject matter jurisdiction when the federal claim "clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial or frivolous." *Bell v. Hood*, 327 U.S. 678, 682–683, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946). In what pertains to the "common nucleus of operative fact" aspect of the test, a loose factual connection between the claims has generally been held sufficient to satisfy this requirement. *See* Wright, Miller & Cooper, *Federal Practice and Procedure: Jurisdiction*, § 3657, pp. 445–447. *See also Cuello–Suarez v. Autoridad de Energía Eléctrica*, 737 F.Supp. 1243, 1249 (D.P.R.1990), *Rosa v. Burns & Roe Services Corp.*, 726 F.Supp. 350, 352 (D.P.R. 1989).

With regard to the second leg of the test, we note that the doctrine of pendent jurisdiction is one of judicial discretion, not of plaintiff's right, and that its justification lies in considerations of judicial economy, convenience, and fairness to the litigants. In exercising our discretion we must consider (a) whether the above stated factors would be served by trying the federal and

state claims in a single proceeding; (b) whether the pendent claims present unsettled questions of state law or a surer-footed reading could be obtained in a state court; (c) whether the state issues predominate in terms of proof, scope of issues raised, or comprehensiveness of remedy sought; and (d) whether jury confusion is likely to result from the divergent theories of relief. *Gibbs,* 383 U.S. at 726–727, 86 S.Ct. at 1139, *Cuello–Suarez,* 737 F.Supp. at 1250.

In *Owen Equipment & Erection Co. v. Kroger,* 437 U.S. 365, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978) the Supreme Court added another level of analysis to the question of whether a federal court has authority to entertain state law claims. Simply stated, it requires us to examine "the posture in which the nonfederal claim is asserted and of the specific statute that confers jurisdiction over the federal claim, in order to determine whether 'Congress in [that statute] has ... expressly or by implication negated' the exercise of jurisdiction over the particular nonfederal claim." *Owen,* 437 U.S. at 373, 98 S.Ct. at 2402, *Cuello–Suarez,* 737 F.Supp. at 1250, *Rosa v. Burns & Roe Services Corp.,* 726 F.Supp. at 351–352.

Having examined the applicable standards, we need not overextend ourselves to conclude that our exercise of pendent jurisdiction is not only appropriate but desirable in the instant case. There can be little doubt that the federal causes of action are not insubstantial and that a common nucleus of operative fact underlies all claims. Perhaps more importantly, considerations of judicial economy argue strongly in favor of our exercise of pendent jurisdiction, as no useful purpose would be serve by forcing plaintiffs to file claims that would require virtually identical elements of proof in the local courts. No uncertainty as to the applicable local law is present, nothing suggests that the jury would not be able to distinguish between the different theories of relief, and, at least as long as the § 1983 claims remain alive, the local law claims do not predominate over the federal claims. Finally, the Supreme Court has already authoritatively decided that the exercise of pendent jurisdiction over state claims is proper in cases filed under the Civil Rights Acts. *Alexander v. Gardner–Denver Co.,* 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974), *Johnson v. Railway Express Agency,* 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975), *Cuello–Suarez,* 737 F.Supp. at 1250.

We sum up briefly. The Court finding that it lacks *in personam* jurisdiction over co-defendant the Hyatt Corporation, the claims filed against the same must be dismissed. Moreover, upon careful review of the record and the applicable case law, the Court further finds that plaintiffs have validly stated claims under §§ 1981 *et seq.* and 2000a *et seq.* of Title 42 of the United States Code, subject, of course, to the ultimate resolution of the question of whether intra-racial discrimination is actionable under the Civil Rights Acts. Finally, in the exercise of our judicial discretion, we will also exercise pendent jurisdiction over plaintiffs' pendent state law claims.

WHEREFORE, the magistrate's report and recommendation is hereby modified, adopted in part, and rejected in part. Defendants' motion for summary judgment is GRANTED with regard to the claims filed against the Hyatt Corporation, which are hereby DISMISSED, and it is DENIED in all other respects. The parties are hereby granted twenty days in which to file legal briefs addressing the question of whether intra-racial discrimination is actionable under 42 U.S.C. §§ 1981 *et seq.* No continuances will be granted.

IT IS SO ORDERED.