Rafael Diaz RAMOS, Plaintiff(s)

v.

**HYUNDAI MOTOR COMPANY, et al., Defendant(s).**

**Civil No. 05–1193(JAG).**

United States District Court, D. Puerto Rico.

May 19, 2006.

Jorge M. Torres–Gomez, Torres Gomez Law Offices, Vicente Santori–Coll, Vicente Santori Coll Law Office, San Juan, PR, for Plaintiffs.

PHV Brian P. Crosby, Gibson, McAskill & Crosby, Buffalo, NY, Keith A. Graffam, Graffam & Biaggi, San Juan, PR, for Defendants.

## OPINION AND ORDER

GARCIA–GREGORY, District Judge.

On February 15, 2005, plaintiff Rafael Diaz Ramos ("Diaz") filed this proposed consumer class action suit against defendants Hyundai Motor Company ("HMC") and Hyundai America Technical Center, Inc. ("HATCI") pursuant to the Puerto Rico Antitrust Act, P.R. Laws Ann. 10 § 259, the Puerto Rico Motor Vehicle Act, P.R. Laws Ann. 10 § 2060 & 2064, and Puerto Rico's general tort statute Art. 1802, P.R. Laws Ann. 31 § 5141 (Docket No. 1). On October 7, 2005, HMC moved to dismiss Diaz's claims for failure to state a claims pursuant to Fed.R.Civ.P. 12(b)(6) (Docket No. 14). On the same date, HATCI moved to dismiss Diaz's claims against it for lack of *in personam* jurisdiction and for improper venue pursuant to Fed.R.Civ.P. 12(b)(2) & (3) (Docket No. 15). On December 15, 2005, Diaz filed his opposition to HATCI's motion (Docket No. 24), and on December 20, 2005 to HMC's motion (Docket No. 25). For the reasons discussed below, the Court **GRANTS** HMC's and HATCI's motions to dismiss.

## FACTUAL BACKGROUND

In 1996, HMC conducted a recall campaign in Puerto Rico for its Hyundai Accent vehicles for model years 1995 through 1997 due to a welding defect with the vehicles' suspension system. In 1998 and in 2003, HMC conducted a partial recall campaign for the same vehicles limited only to the "Salt–Belt States", a group of twenty states where salt is used to de-ice roads during the winter months, due to corrosion problems in the vehicles' suspension system. Diaz now files this suit on behalf of all owners of 1995–1997 Hyundai Accent vehicle owners in Puerto Rico, seeking to challenge HMC's and HATCI's failure to include Puerto Rico in the 1998 and 2003 recalls. Diaz argues that because the environmental conditions in Puerto Rico are also especially conducive to corrosion, the same safety conditions which prompted the recalls in the "Salt–Belt States" could occur here.

## DISCUSSION

### A. *Motion to Dismiss Standard*

Pursuant to Fed.R.Civ.P. 12(b)(6), a complaint may not be dismissed unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *See Brown v. Hot, Sexy, and Safer Prods., Inc.*, 68 F.3d 525, 530 (1st Cir.1995). The Court accepts all well-pleaded factual allegations as true, and draws all reasonable inferences in plaintiff's favor. *See Correa–Martinez v. Arrillaga–Belendez*, 903 F.2d 49, 51 (1st Cir.1990). The Court need not credit, however, "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like" when evaluating the Complaint's allegations. *Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir.1996). When opposing a Rule 12(b)(6) motion, "a plaintiff cannot expect a trial court to do his homework for him." *McCoy v. Massa-*

chusetts Institute of Tech., 950 F.2d 13, 22 (1st Cir.1991). Plaintiffs are responsible for putting their best foot forward in an effort to present a legal theory that will support their claim. Id. at 23 (citing Correa–Martinez, 903 F.2d at 52). Plaintiffs must set forth "factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery under some actionable theory." Gooley v. Mobil Oil Corp., 851 F.2d 513, 514 (1st Cir.1988).

### B. HMC's Motion to Dismiss

HMC argues in its motion that plaintiff's claims must be dismissed because (1) plaintiff has not alleged a cognizable injury, (2) plaintiff's claims under Puerto Rico law are preempted by Federal law, and (3) plaintiff cannot support his claims under any of the cited Puerto Rico laws. Because it finds that plaintiff has failed to establish a cause of action under Puerto Rico law, the Court need not enter into a discussion of HMC's preemption and lack of injury arguments and will proceed under the assumption for purposes of this opinion that Diaz can proceed under state law rather than Federal law.

■■■ First, Diaz premises his complaint on § 259 of Puerto Rico's Anti–Trust Act, which seeks to prevent any "[u]nfair methods of competition and unfair or deceptive acts or practices in trade or commerce...." P.R. Laws Ann. 10 § 259(a). A cause of action under the Antitrust laws, however, generally requires the plaintiff to show that the defendant engaged in conduct that has a negative impact upon the free flow of trade and commerce and not merely that the defendant may have put a defective product on the market and refuses to correct it. See, e.g., Pressure Vessels of Puerto v. Empire Gas de Puerto Rico, 137 D.P.R. 497, 509 (1994)("The cardinal purpose of [P.R. Laws Ann. 10 § 258] is to protect free

competition."); Euromodas, Inc. v. Zanella, Ltd., 368 F.3d 11, 17 (1st Cir.2004)("To create a trialworthy issue in a vertical restraint case brought pursuant to section 1 of the Sherman Act, a plaintiff must make two showings: concerted action and harm to the competitive process."); Recetas Por Menos, Inc. v. Five Development Corp., 368 F.Supp.2d 124, 132 (D.P.R. 2005)("[I]n order to establish an antitrust violation in the instant case Plaintiffs have to show that the alleged arrangement among Defendants has anti-competitive effects...."). Diaz has not established, or even alleged, that HMC's decision to not include Puerto Rico in the 1998 and 2003 recalls somehow adversely affects trade and commerce. His claim is rather premised on the possible injury he might suffer if his vehicle malfunctions, which it has not. Thus, Puerto Rico's Antitrust laws can offer him no relief.

Second, Diaz alleges a cause of action under the Consumers Act, P.R. Laws Ann. 32 §§ 3341–3344. These provisions, however, do not contain any substantive law, but rather are part of the Code of Civil Procedure and are limited to authorizing the filing of class actions by consumers for damages or against monopolies. A successful suit would still require that the plaintiff establish a viable cause of action under the appropriate statutes which, as discussed above, Diaz has failed to do.

■■■ Third, Diaz alleges a cause of action under the Motor Vehicle Act, P.R. Laws Ann. 10 §§ 2060 & 2064. These statutes establish that vehicle manufacturers shall be liable for any damages caused by certain defects in the vehicles (§ 2060) and that a manufacturer who violates any of the act's provisions could be subject to the provisions of the Antitrust Act (§ 2064). As it pertains to § 2060, Diaz has not established that he has suffered any injury caused by a defect in his vehi-

cle. Furthermore, while § 2064 authorizes the filing of complaints against manufacturers under the Antitrust laws for failure to comply with the Act's provisions, it still requires a viable Antitrust cause of action which, as discussed above, Diaz cannot establish.

■ Finally, Diaz alleges a cause of action under Art. 1802, P.R. Laws Ann. 31 § 5141, Puerto Rico's general tort statute. A cause of action for tort damages, however, presupposes that the plaintiff has suffered an actual injury caused by defendant's fault or negligence. *See, e.g., Admor. F.S.E. v. Almacen Ramon Rosa,* 151 D.P.R. 711, 725 (2000)(To establish a cause of action for damages, plaintiff must show by preponderance of the evidence the reality of the injury suffered, the existence of a negligent act or omission, and the element of causality). In this case, Diaz has not alleged that he has suffered any injury other than his subjective fear that his vehicle could malfunction due to corrosion and cause an accident. Art. 1802 does not provide for the compensation of potential future injuries, only injuries actually suffered.

Therefore, Diaz has failed to establish a viable cause of action under any of the cited laws and his complaint against HMC must be dismissed.

## C. *HATCI's Motion to Dismiss*

■ In diversity cases, *in personam* jurisdiction over a non-resident defendant is determined according to the long-arm statute of the forum in which the federal district court sits. *Pizarro v. Hoteles Concorde Int'l,* 907 F.2d 1256, 1258 (1st Cir. 1990). The exercise of specific *in personam* jurisdiction pursuant to the state long-arm statute must fall within constitutional bounds. *See Pritzker v. Yari,* 42 F.3d 53, 60 (1st Cir.1994); *Ticketmaster–New York, Inc. v. Alioto,* 26 F.3d 201, 207 n. 9 (1st Cir.1994). Accordingly, there are two requirements for the proper exercise of specific in personam jurisdiction: (1) that the forum state have a long-arm statute that grants jurisdiction over defendant and (2) that the exercise of jurisdiction under that state statute does not exceed constitutional limits. *Pritzker,* 42 F.3d at 60.

■ Puerto Rico's long-arm statute is contained in Rule 4.7 of the Puerto Rico Rules of Civil Procedure. Rule 4.7 provides in part:

(a) Whenever the person to be served is not domiciled in Puerto Rico, the General Court of Justice shall take jurisdiction over said person if the action or claim arises because said person:

(1) Transacted business in Puerto Rico personally or through an agent; or

(2) participated in tortious acts within Puerto Rico personally or through his agent;

(3) was involved in an automobile accident while driving a motor vehicle in Puerto Rico personally or through his agent; or

(4) was involved in an accident in Puerto Rico while operating, personally or through his agent, a freight or passenger transportation business in Puerto Rico, between Puerto Rico and the United States or between Puerto Rico and a foreign country, or if, in the operation of said business, an accident occurs outside Puerto Rico and the contract had been executed in Puerto Rico; or

(5) owns, uses or possesses, personally or through his agent, real property in Puerto Rico.

P.R. Laws Ann. 32, App. III, Rule 4.7(a). It has been interpreted to extend personal jurisdiction to "the full extent of constitutional authority." *Pritzker,* 42 F.3d at 60;

see also *Dalmau Rodriguez v. Hughes Aircraft Co.,* 781 F.2d 9, 12 (1st Cir.1986) (*citing A.H. Thomas Co. v. Superior Court,* 98 P.R.R. 864, 870 n. 5 (1970)). The exercise of *in personam* jurisdiction by courts in Puerto Rico is therefore "limited only by the due process analysis of *International Shoe [v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) ] and succeeding cases." *Commonwealth of Puerto Rico v. SS Zoe Colocotroni,* 628 F.2d 652, 668 (1st Cir.1980). Accordingly, this Court need only determine whether the exercise of jurisdiction over the defendants in the instant case falls within constitutional bounds.

■ Due process requires that minimum contacts exist between the non-resident defendant and the forum, in this case Puerto Rico, where the claim was filed. *See World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 289, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). The minimum contacts must be such that "the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " *International Shoe,* 326 U.S. at 316, 66 S.Ct. 154. In other words, Due Process "gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." *Volkswagen,* 444 U.S. at 297, 100 S.Ct. 559.

■ The First Circuit has developed a three-pronged analysis to sharpen the inquiry into minimum contacts. According to this test, a court may exercise specific personal jurisdiction if the following requirements are met:

First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities. Second, the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's court foreseeable. Third, the exercise of jurisdiction must, in light of the Gestalt factors, be reasonable.

*Pritzker,* 42 F.3d at 60–61.

■ In this case, Diaz argues that HATCI complies with the requirements of Puerto Rico's long-arm statute because (1) its act of omitting Puerto Rico from the 1998 and 2003 recalls is an act or transaction consummated within this forum because it affected nearly 32,000 class vehicles; (2) its omission gave rise to the cause of action because plaintiff and the class he purports to represent are exposed to substantial and life-threatening injury; and (3) that its omission is substantial enough so as not to offend the due process requirements of fair play and substantial justice. Diaz's claims against HATCI, however, must be dismissed because the Court finds that HATCI has neither conducted a business transaction in Puerto Rico nor committed a tortious act within Puerto Rico.

First, as discussed above, Diaz has suffered no injury. Thus, if Diaz cannot establish that he suffered an injury, it clearly follows that HATCI did not commit a tortious act against him within Puerto Rico.

And second, Diaz has failed to establish that HATCI transacted any business within Puerto Rico. "For such 'minimum contacts' to be sufficient for the exertion of personal jurisdiction, they must be the result of a purposeful act by defendant." *Santini Rivera v. Santon,* 118 F.Supp.2d 159, 163 (D.P.R.2000). "[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within

the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958)(*citing International Shoe,* 326 U.S. at 319, 66 S.Ct. 154).

HATCI is a subsidiary of HMC which purpose seems to be the design and development of HMC's vehicles and that takes no part in the actual selling of the vehicles. Actually, it seems HATCI does not conduct any business with entities other than its parent company.[1] It is HMC, through its dealers, who actually transacts any business in Puerto Rico by importing and selling its vehicles here. So while there's no question that HMC does transact business in Puerto Rico, Diaz cannot show that HATCI has in any way purposely entered the Puerto Rico market. Thus, no basis exists for the Court to exercise its jurisdiction over HATCI and Diaz's claims against it must be dismissed.[2]

### CONCLUSION

For the foregoing reasons, the Court **GRANTS** HMC's and HATCI's motions to dismiss. Diaz's claims are hereby dismissed. Judgment shall enter accordingly.

IT IS SO ORDERED.

---

1. *See* http://www.hatci. com.

2. It bears noting that even if the Court had *in personam* jurisdiction over HATCI, it would

still be inclined to dismiss Diaz's claims because, as discussed above, he has failed to establish a cause of action under any of the above-cited laws.